IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: STEPHEN S. MEREDITH, CPA, P.C.

                                        Debtor.

ROY M. TERRY, JR., TRUSTEE FOR THE
BANKRUPTCY ESTATE OF STEPHEN S.
MEREDITH, CPA, P.C.,

                                        Plaintiff,

               v.

DARLENE S. MEREDITH, et al.,

                                   Defendants.

Civil Action Number 3:05CV506-JRS

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Defendants' Motion to Withdraw Reference

of Jurisdiction to the Bankruptcy Court arising out of the bankruptcy proceedings against Stephen

S. Meredith, CPA, P.C.  Roy Terry, trustee for the bankruptcy estate of Stephen S. Meredith, CPA,

P.C., brought suit against Darlene S. Meredith, Meredith Financial Group, Inc. and Stephen S.

Meredith, CPA, P.L.L.C. (collectively "the defendants") in the United States Bankruptcy Court.  In

an eight-count complaint, the trustee charged the defendants as follows:

> (Count I) Alter Ego/Single Business Entity as to Meredith Financial
> Group ("MFG") and Stephen S. Meredith, CPA, P.L.L.C.
> ("SSMPLLC");
>
> (Count II) Piercing the Corporate Veil as to Darlene Meredith and
> MFG;

1

(Count III) Successor Liability – MFG and SSMPLLC;

(Count IV) Avoidance of Fraudulent Transfers pursuant to 11 U.S.C. § 548 – Mrs. Meredith and MFG;

(Count V) Turnover of Property of the Estate and Accounting Pursuant to 11 U.S.C. § 542 – MFG and Mrs. Meredith;

(Count VI) Avoidance of Post Petition Transfers of Property of the Estate Pursuant to 11 U.S.C. § 549 – Mrs. Meredith, MFG and SSMPLLC;

(Count VII) Avoidable Preferences under 11 U.S.C. § 547 – Mrs. Meredith;

(Count VIII) Conspiracy under Va. Code Ann. §§ 18.2-499 and 500 – Mrs. Meredith, MFG and SSMPLLC.[1]

In her Motion to Withdraw Reference of Jurisdiction to Bankruptcy Court pursuant to 28 U.S.C. § 157(d), Mrs. Meredith, referring to herself as Darlene S. Greene, the former wife of Stephen Meredith, claims that the adversary proceeding filed by the trustee does not involve core bankruptcy issues.[2] Additionally, Mrs. Meredith insists that four of the counts are based on state law claims and that she has demanded a jury trial on each count of the complaint.

<u>Arguments Presented</u>

The defendants assert that the Court *must* withdraw the bankruptcy reference when the

---

[1]Va. Code § 18.2-499 provides that any two or more persons who conspire to injure another in his trade or business shall be guilty of a class 1 misdemeanor; such punishment is in addition to any civil relief that may be available under § 18.2-500.

[2]Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

resolution of the proceeding requires consideration of both Title 11 [the bankruptcy code] and other laws of the United States or for "cause shown."[3]   Defendants urge the Court to consider the following factors when determining whether cause exists to withdraw the reference: (1) whether the cause of action involves a core or non-core bankruptcy issue; (2) whether the cause of action is legal or equitable; (3) whether judicial economy is best served by this withdrawal; (4) whether withdrawal will lead to forum shopping; (5) whether withdrawal will promote uniformity in the administration of the bankruptcy laws; (6) whether withdrawal will foster economical use of debtor's and creditor's resources; and (7) *whether the withdrawal will preserve the right to a jury trial*.  See In re US Airways Group, Inc., 296 B.R. 673 (E.D. Va. 2003) (emphasis added by the defendants).

First, defendants claim that the adversary proceeding does not primarily involve core bankruptcy proceedings.[4]  Core proceedings depend on the Bankruptcy Code for their existence.  See C.F. Trust, Inc. v. Tyler (In re Peterson), 318 B.R. 795, 803 (E.D. Va. 2004).  Whereas, a non-core proceeding has "little or no relation to the Bankruptcy Code, do[es] not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case." In re J.Baranello & Sons, Inc., 149 B.R. 19, 24 (Bankr. E.D.N.Y. 1992).  Once the Court finds that a proceeding is core or non-core, the court should "weigh questions of efficient use of judicial resources, delay and costs to the parties,

---

[3]As previously stated by Judge Ellis, "mandatory withdrawal is not warranted unless the bankruptcy court must decide a question under non-bankruptcy federal law in order to resolve the proceeding.  In other words, an issue . . . of non-bankruptcy federal law must be essential or material to the disposition of the bankruptcy proceeding before withdrawal of the reference in mandated." In re US Airways Group, Inc., 296 B.R. 673, 683 (E.D. Va. 2003).

[4]The Bankruptcy Court possesses jurisdiction to enter orders and judgments in core proceedings.  28 U.S.C. § 157(b)(1).  With regard to non-core proceedings, unless the district court refers the matter to the bankruptcy court and the parties to the proceeding consent, a bankruptcy court may only issue proposed findings and recommendations to the district court.  28 U.S.C. §§ 157(c)(1) and (2).

uniformity of bankruptcy administration, the prevention of forum shopping and other related

factors." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).

The defendants insist that the central issues raised by the trustee's complaint do not involve

rights created by bankruptcy law.  Specifically, Counts I (alter ego), II (piercing the corporate veil),

III (successor liability) and VIII (statutory conspiracy) depend on state law.  Moreover, defendants

maintain that resolution of the four remaining counts specifically referencing the Bankruptcy Code

depend on the outcome of the alter ego and veil piercing counts.

Regarding the second and fourth factors, defendants claim that the complaint is primarily

legal, not equitable and that withdrawal of the reference is not likely to lead to forum shopping.  As

to the third and fifth factors, defendants maintain that judicial economy will be served and the

uniformity of the bankruptcy code preserved by withdrawing the reference.  Finally, defendants

emphasize that they have requested a jury resolve each count of the complaint.  Defendants claim

an absolute right to have the state law actions tried to a jury.

The defendants do not cite any substantive case law for their position or their general

assertions.  The trustee, on the other hand, vigorously opposes defendants' motion.  According to

the trustee, this action primarily seeks to avoid certain transfers made by the debtor, Stephen

Meredith, CPA, P.C., to the defendants and to hold those defendants liable for the obligations of the

debtor.  The trustee claims that this motion is an attempt by the defendants to forum shop and that

judicial economy is best served by allowing the bankruptcy court to retain jurisdiction over this

proceeding.  In addition, the trustee declares that the defendants are not entitled to a jury trial on all

of the counts in the complaint and that, to the extent any portions of the proceeding should be

withdrawn to this Court, such withdrawal should not occur until the adversary proceeding is ripe for

trial.

This case arises out of the protracted legal battle between Stephen Meredith and Nadine Blackford. Obviously, the bankruptcy court is very familiar with this case, which has been appealed to this Court twice in the last year; once appealing Judge Tice's decision to convert the case from Chapter 13 to Chapter 7 and most recently after Judge Tice granted Meredith relief from the automatic stay to appeal the underlying state court judgment in favor of Blackford which precipitated the bankruptcy filing. According to the trustee, the bankruptcy court is familiar with Mrs. Meredith's involvement in much of the pre- and post-petition conduct that serves as the basis of the fraud allegations in the instant proceeding. This familiarity with the facts and circumstances of the case lends support to the judicial economy argument of maintaining the action before the bankruptcy court. Importantly, the trustee notes that the third defendant, Stephen S. Meredith, P.L.L.C., has not requested a jury trial and has not joined the motion to withdraw the reference. The trustee claims that this will cause a duplication of efforts between the bankruptcy court and the district court.

While the trustee recognizes the defendants' right to a jury trial on certain issues, he claims that most of the complaint seeks to determine equitable rights and asks the court to impose equitable remedies. The trustee requests, in the alternative, that the Court delay any decision on withdrawing the reference until after discovery and until the parties can identify the legal issues with more certainty. Citing In re Stansbury Poplar Place, Inc., 13 F.3d 122 (4th Cir. 1993), the trustee states that the fact that some aspect of the trial may take place in the District Court does not necessitate that the reference should be withdrawn immediately. For the sake of judicial economy, the trustee urges the Court to permit this proceeding to run its course in the bankruptcy court for as long as possible.

Discussion

The parties have not provided the Court with any substantive case law controlling the questions presented by the motion to withdraw the reference. This is a complicated area of bankruptcy law and the parties have done little more than identify the issues. For example, the defendants recognized a distinction between legal and equitable issues but they did not identify which of the eight counts presents a legal issue versus an equitable issue.

In Steyr-Daimler-Puch of America Corporation v. Pappas, the Fourth Circuit considered whether a bankruptcy trustee may bring an alter ego claim. 852 F.2d 132, 135 (4th Cir. 1988). The Court concluded that "an alter ego claim, under Virginia law, is property of the corporation so that it becomes property of the bankruptcy estate over which the trustee has control pursuant to 11 U.S.C. § 541." Id. Therefore, the trustee, who succeeds to the rights of the debtor, can bring an alter ego claim. Id. at 136.

Under Virginia law, "a corporation has an equitable interest in the assets of an alter ego because the corporation and the alter ego are 'one and the same.'" Id. (quoting Pepper v. Dixie Splint Coal Co., 165 Va. 179 (1935)). Pursuant to 11 U.S.C. § 541(a)(1), the bankruptcy estate is comprised of all of the debtor's legal and equitable interests, including choses in action. Therefore, the bankruptcy estate has the right to proceed against an alter ego and claim its equitable interest in assets of the alter ego. Pappas, 852 F.2d at 136. Certain conclusions flow from the determination that the alter ego claim is property of the estate; namely that the automatic stay applies and that the trustee is given full authority over it. Therefore, "before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim." Id. In this case, the trustee has obviously not abandoned the claim and is actively seeking the estate's

equitable interest in assets of the alter ego; as such, the trustee action is an appropriate controversy

for the bankruptcy court.

Virginia courts permit corporate veil-piercing where adhering to the corporate structure

would work an injustice. See C.F. Trust, Inc. v. First Flight Ltd. P'Ship, 306 F.3d 126, 134 (4th Cir.

2002). Veil-piercing is regarded as an extraordinary remedy only permitted "in exceptional

circumstances when necessary to promote justice." Id. In this regard, piercing the corporate veil

appears to be equitable in nature. To pierce a corporate veil, Virginia courts require that a party

prove (i) that the corporation is "the alter ego, alias, stooge, or dummy" of the individual and (ii) that

the individual used the corporate structure to "evade a personal obligation, to perpetrate fraud or a

crime, to commit an injustice, or to gain an unfair advantage." Id. at 135 (internal citations omitted).

By the second requirement, Virginia mandates proof of fraud or a legal wrong as a requisite to

recovery.

The defendants did not provide any discussion as to which counts present legal issues that

require a jury trial. In Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, the Supreme Court

noted generally that "an action for money damages was the traditional form of relief offered in the

court of law" with the typical situation being one for breach of contract. 494 U.S. 558, 570 (1990).

However, the Court qualified this statement by noting that damages are equitable where they are

restitutionary, such as in actions for disgorgement or when damages are incidental to or intertwined

with injunctive relief. Id. In Count One (alter ego), the trustee asks the Court to determine that Mrs.

Meredith, MFG and SSMPLLC are alter egos and hold MFG and SSMPLLC accountable for the

debtor's debts. Additionally, the trustee is seeking damages as a result of the defendant's actions.

In Count Two (piercing the corporate veil), the trustee asks the Court to pierce the corporate

veil of MFG and hold Mrs. Meredith responsible for the debts and liabilities of MFG as well as any damages caused by her actions. In Count Three (successor liability), the trustee seeks to hold MFG and SSMPLLC liable for the debtor's debts because they are the corporate successors to the debtor. In Count Eight (statutory conspiracy), the trustee requests that the Court enter judgment against Mrs. Meredith, MFG and SSMPLLC in an amount determined at trial.

In Count Four, the trustee is seeking to avoid the debtor's transfer of assets to MFG and Mrs. Meredith. The trustee claims that the transfers were made for inadequate consideration and with the intent to continue the debtor's business to the detriment of his creditors. The trustee asks the Court to order the defendants to turn over the assets from the fraudulent transfers or to enter a money judgment for the value of such assets. In Count Five, the trustee seeks to recover property from MFG and Mrs. Meredith which he claims belongs to the estate. The Complaint alleges that MFG and Mrs. Meredith used the assets of the debtor, following the transfers, for their own gain and that the services performed for MFG and the payments received by MFG properly belong to the debtor. In Count Six, the trustee claims that Mrs. Meredith and MFG and SSMPLLC continue to receive the debtor's assets through services performed and that MFG and SSMPLLC are merely continuing the operations of the debtor as its alter ego. The trustee claims that the property transferred to the defendant's belongs to the estate and that it must be returned or the Court must enter a judgment award in the amount of the transferred assets. Finally, in Count Seven, the trustee seeks to avoid certain cash transfers from the debtor to Mrs. Meredith as preferential transfers by an insolvent debtor.

The Seventh Amendment right to a jury trial hinges upon the legal or equitable nature of the matter before the Court. See Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47 (1830). In

determining if a suit is equitable or legal, courts will first look to the nature of the issues involved and second, the nature of the remedy sought. Kinder v. Coleman & Yates Cole Co., 974 F. Supp. 868, 876 (E.D. Va. 1997). Remedies intended to punish culpable individuals are considered legal remedies. Id. at 877.

In In re NTW, Inc., before the Bankruptcy Court for the Eastern District of Virginia, a creditor sought to recover compensatory and punitive damages from the estate based on claims that the debtor fraudulently induced it to enter into a franchise agreement. The creditor demanded a jury trial. The debtor moved to strike the demand for a jury trial and argued that the matter presented an equitable dispute over the allowance and disallowance of claims against the bankruptcy estate. In re NTW, Inc., 69 B.R. 656, 663 (Bankr. E.D. Va. 1987). The creditor regarded its claim as a state law action for money damages which concurrently established the extent of its right against the debtor's estate. Id.

The bankruptcy court found that "a determination of claims in bankruptcy is an equitable proceeding." Id. Adopting the Supreme Court's reasoning in Katchen v. Landy, 382 U.S. 323 (1966), the court found that when an issue "arises as part of the process of allowance and disallowance of claims, it is triable in equity" even though evaluation of a right may entail a determination of the merits of a claim at law. In re NTW, Inc., 69 B.R. at 663. The court determined that the claims at law were not the matter which brought the parties before the bankruptcy court, rather, the parties sought an equitable determination of a claim to a portion of the estate. Clearly, the bankruptcy courts may exercise equitable jurisdiction over a creditor who filed a proof of claim against the estate in order to conduct a preference trial.

However, a creditor is entitled to demand a jury trial on a legal claim if the trustee pursued

the preference action outside bankruptcy court.  Katchen, 382 U.S. at 336.  In Granfinanciera, S.A.

v. Nordberg, 492 U.S. 33, 36 (1989), the Supreme Court held that "the Seventh Amendment entitled

persons who had not submitted claims against a bankruptcy estate to a jury trial when they were sued

by the bankruptcy trustee to recover an allegedly fraudulent monetary transfer, notwithstanding the

fact that fraudulent conveyance actions are core proceedings under the Bankruptcy Code."  In re

Stansbury Poplar Place, Inc., 13 F.3d 122, 124 (4th Cir. 1993).  In Granfinanciera, the Supreme

Court held that fraudulent conveyance actions initiated by the trustee in the district court were

actions at law and required a jury trial.  Granfinanciera, 492 U.S. at 45-47.

The Supreme Court also examined the relief sought – "money payments of ascertained and

definite amounts" with "no facts that call for an accounting or other equitable relief" – and concluded

that the rights involved in a fraudulent conveyance action are legal rather than equitable.  Id. at 47-

48.  In Stansbury, the Official Committee of Unsecured Creditors, with the authorization of the

bankruptcy court, commenced actions against several of the debtor's officers, directors and insiders

to recover fraudulent and preferential transfers.  These individuals demanded a jury trial.

The Committee argued, in contrast to Gramfinanciera, that this was not a case in which a

bankruptcy trustee bought a simple cause of action for a specified amount of money.  Stansbury, 13

F.3d at 125.  Rather, the Committee argued that its claims required an equitable accounting as an

essential element of the complaint in order to determine the amount of money involved.  The

Committee also argued that the bankruptcy court, with its familiarity with the debtor, was ideally

suited to preside over the accounting.  Id.  However, the Fourth Circuit rejected the Committee's

argument and concluded that the claims were "legal actions seeking monetary damages" and that the

Committee's request for an equitable accounting did not trump the individuals' right to a jury trial

on the fraudulent conveyance claims.  Id.

In accordance with tradition, the right to maintain a suit for an equitable remedy depends on the absence of an adequate remedy at law.  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477-78 (1962). "[W]here both legal and equitable issues are presented in a single case, only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims."  Id. at 472-73.  According to the Fourth Circuit, if a creditor files a proof of claim against the bankruptcy estate, that party subjects himself to the bankruptcy court's equitable power and is not entitled to a jury trial if a subsequent action alleging preferential transfers is filed against that creditor.  Stansbury, 13 F.3d at 125-26.  However, "[i]f a party does not submit a claim against the bankruptcy estate, the preferential transfer can only be recovered through a legal action and the preference defendant is entitled to a jury trial."  Id. at 126.

In Stansbury, the Court proceeded to decide whether the bankruptcy court had the authority to conduct jury trials in core proceedings such as in fraudulent conveyance and preferential transfer actions.  The Fourth Circuit held that "bankruptcy judges are not authorized to conduct jury trials, where the Seventh Amendment provides the right to a jury trial in a core proceeding in bankruptcy, it must take place in the district court."  Id. at 128.

### Conclusion

The trustee in the instant action is doing two things at the same time; he is seeking money damages against Mrs. Meredith, MFG and SSMPLLC and he is seeking to regain the estate's equitable interest in certain assets.  While doing so in the context of a preference and fraudulent conveyance action, the trustee nevertheless is seeking both legal and equitable remedies in order to recover property belonging to the estate.  While the Court can certainly withdraw the reference in

11

light of the legal issues the trustee's complaints presents, the Court will deny the motion to withdraw

the reference of jurisdiction to the bankruptcy court and remand the matter to the Bankruptcy Court

for a determination of which issues are appropriate for a jury trial and which can be resolved through

the Bankruptcy Court's equity jurisdiction.  At a minimum, the Bankruptcy Court is uniquely

qualified to supervise discovery and administer any pre-trial issues presented in this case. See

Stansbury, 13 F.3d at 128.

       An appropriate Order shall issue.


ENTERED this  19th  day of AUGUST, 2005


               /s/ James R. Spencer

               JAMES R. SPENCER
               UNITED STATES DISTRICT JUDGE